**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BOOZER, | ) | |
| | ) | CASE NO.   1:10-cv-02562 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff John Boozer ("Boozer") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Boozer's claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

On July 27, 2007, Social Security Administration determined that Boozer, who had received disability benefits as a child, did not qualify for benefits as an adult.   After his request for reconsideration was denied, Boozer timely requested an administrative hearing.

On March 9, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Boozer, *pro se*, and his mother testified. Kathleen L. Reis testified as an impartial vocational expert ("VE"). On March 24, 2010, the ALJ found Boozer was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age twenty-three (23) at the time of his administrative hearing, Boozer is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Boozer has a high school education and no past relevant work history.

### *Medical Evidence*

On April 19, 2001, when Boozer was in the eighth grade and enrolled in classes for the mildly mentally handicapped, a school psychologist, Tresa Huggins, administered an intelligence test – the Wechsler Intelligence Scale for Children (WISC). (Tr. 54-59.) Boozer had a Verbal IQ of 73, a Performance IQ of 68, and a Full Scale IQ of 68. (Tr. 54.) Boozer had a Verbal Comprehension Index of 80, a Perceptual Organization Index of 75, a Freedom of Distractibility Index of 67, and a Processing Speed Index of 58. *Id.* The results placed him in the mildly mentally handicapped range. (Tr. 56.) Boozer had severe weaknesses in the areas of mental computation and arithmetic reasoning, visual-motor speed, paper and pencil tasks, and nonverbal reasoning. *Id.* It was recommended that Boozer be evaluated by the teacher of mildly mentally handicapped students, and that basic directions and instructions be explained to him in a simple manner. (Tr. 58.)

On June 12, 2007, Glenn Davidson, Ph.D., a clinical psychologist, conducted a consultative psychological examination at the request of the Bureau of Disability Determination. (Tr. 145-51.) Dr. Davidson found that Boozer had fair ability to understand instructions, intelligible speech, normal motor behavior, and slow pace. (Tr. 146-47.) Boozer had mild to moderate difficulty focusing, his responses to questions were "brief, but relevant" and his thought process was "logical and sequential." *Id*. He showed good judgment and insight and was able to give specific information about his income, rental expense, and Food Stamps receipts. *Id*. He was able to do simple addition, subtraction and (limited) multiplication, but was unable to do division. *Id*. He successfully counted backward from 20-1 and recited the alphabet correctly. *Id*. He was able to spell the word "world" correctly, but unable to spell it backwards. *Id*. On immediate memory testing, he recalled five digits forward and four backward. *Id*. On short-term recall, he was correct with one out of three items. *Id*. His remote memories were intact. *Id*. Boozer stated that he paid his own bills, and did his own chores, to include cooking. (Tr. 146-47.) Upon testing, Boozer scored a Full Scale IQ of 71 on the Wechsler Adult Intelligence Scale test (WAIS), which placed him in the borderline range. (Tr. 147, 149.) His Verbal and Performance IQ scores were 72 and 75 respectively. (Tr. 147.) His Verbal Comprehension Index was 76, which placed him in the middle of the borderline range. *Id*. Dr. Davidson diagnosed borderline intellectual functioning and assigned a Global Assessment Functioning (GAF) Score of 65.[1] (Tr. 148.)

---

[1] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

On July 26, 2007, a state agency reviewing psychologist, J. Larsen, Ph.D., reviewed the medical evidence of record. (Tr. 152-66.) In a Mental Residual Functional Capacity (RFC) Assessment, Dr. Larsen found Boozer was moderately limited in the following areas: his ability to understand and remember detailed instructions, his ability to carry out detailed instructions, his ability to complete a normal workday without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, his ability to respond appropriately to changes in the work setting, and in his ability to set realistic goals or make plans independently of others. (Tr. 152-53.) In all other categories, Dr. Larsen found that Boozer was not significantly limited. *Id*. Dr. Larsen stated that, "although [claimant] would experience difficulty with complex task completion, he appears to be capable of performing [simple, repetitive tasks] on a consistent basis." (Tr. 154.) Dr. Larsen also completed a Psychiatric Review Technique form noting that Boozer suffered from borderline intellectual functioning. (Tr. 155-66.) Boozer was found moderately limited in activities of daily living, as well as in maintaining concentration, persistence, or pace. (Tr. 165.) Boozer had mild difficulties in maintaining social functioning and had no episodes of decompensation of an extended duration. *Id*.

On September 24, 2007, state agency reviewing psychologist, F. Kladder, Ph.D., reviewed the records and found Boozer had borderline intellectual functioning. (Tr. 167-83.) Dr. Kladder concluded that while Boozer had "significant limitations understanding instructions more complex in nature, the evidence does not show he has limitations understanding and performing simple, repetitive tasks." (Tr. 169.)

4

*Hearing Testimony*

At the hearing Boozer testified to the following:

- He completed high school, but took special education classes in Math and English. (Tr. 194-95.) He has a little bit of trouble reading and writing. (Tr. 195-96.)

- He does not have a driver's license. (Tr. 194.)

- He lives alone in an apartment, two or three blocks from his mother. (Tr. 197.) He tries to keep the house clean and cares for two cats. *Id*. He does his own cooking, cleaning, shopping, and laundry. (Tr. 197-98.)

- He takes care of his personal grooming and hygiene needs, but sometimes requires a reminder. (Tr. 198.)

- He enjoys hanging out with friends, and sometimes sees his grandmother and cousins. (Tr. 199-200.)

- He usually wakes up between 9 a.m. and 11 a.m., because he stays up late watching movies. (Tr. 200-01.)

- He once had a factory job for two days, but could not handle the fast pace. (Tr. 201.)

- He does not see a doctor on a regular basis, and does not take any medication. He does not smoke, and drinks alcohol only socially. (Tr. 202-03.)

- He has no problems standing or walking and can bench press 145 pounds. (Tr. 205.)

- He does not mind being around people, so long as there are not too many people, as he "can't handle a bunch of noise and stuff." (Tr. 206.)

Boozer's mother testified to the following:

- She has to tell Boozer to shower, comb his hair, and change his clothes, as he will wear his clothes for three days at a time. (Tr. 199.)

- Boozer cannot handle money by himself, and would spend it on "ridiculous things" if permitted to do so. (Tr. 204.)

- Boozer prepares his own meals and lives by himself. (Tr. 204.)

- Boozer does not have a medical condition requiring the care of a doctor. (Tr. 205.)

The ALJ posed the following hypothetical question to the VE:

> Assume we had a person of the same age and educational background as Mr. Boozer. We're going to say this person has no physical limitations, however, we're going to have this person doing simple, routine work, with simple, short instructions, and simple work related decisions with few work place changes. This person is not working at a production rate pace. This person is having minimal contact with the public, as well as infrequent, superficial contact with coworkers and supervisors. This person is not required to write reports, or read instructions, nor are we going to require this person to do any math calculations. Would there be any work in the regional or national economy for such a person?

(Tr. 209-10.) The VE responded that there were jobs in the regional or national economy that such a person could perform. *Id.* The VE gave the following examples: industrial cleaner, order picker, and salvage laborer. (Tr. 210-11.) However, the VE stated that a person needing to be reminded three times daily of his or her tasks would not be employable without an accommodation. (Tr. 212.)

### III. Standard for Disability

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful

6

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Boozer established a medically determinable, severe impairment, due to borderline intellectual functioning; however, his impairment, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Boozer was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with some non-exertional limitations. (Tr. 13.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Boozer is not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

*Incomplete Record*

Boozer asserts that the determination that he was not disabled is not supported by substantial evidence. (ECF No. 17 at 7-9.) Specifically, Boozer notes that the ALJ erred by relying upon a consultative report performed by Glenn Davidson, Ph.D., in finding that he did not meet or equal a listed impairment. (ECF No. 17 at 7, *citing* Tr. 11.)

Pursuant to Listing 12.05, "[t]he required level of severity for [mental retardation] is met when the requirements in A, B, C, or D are satisfied."

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>
>   2. Marked difficulties in maintaining social functioning; or
>
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
>   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Appendix 1. With respect to the A criteria, the ALJ found that Boozer had "no significant difficulties attending to his own needs" based on the fact that he lives alone and attends to his own personal care and cooking. (Tr. 12.) With respect to the B criteria, the ALJ found that Boozer does not have a qualifying verbal, performance, or full scale IQ. *Id*. As to the C criteria, the ALJ noted that not only did Boozer lack a qualifying IQ score, but there was "no evidence of another physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. Finally, with regard to the D criteria, the ALJ concluded that Boozer did not have marked limitations in any of the categories, nor was there evidence of any episodes of decompensation of extended duration. *Id*.

Boozer argues that these findings are not supported by substantial evidence, because Dr. Davidson's consultative report, upon which the ALJ relied, was incomplete.[2] (ECF No. 7.) Specifically, Boozer points out that Dr. Davidson's test results did not include working memory scale and processing speed scale results. *Id*. Furthermore, Boozer argues, no reasons were given as to why such testing was not part of the report. *Id*. Boozer argues that past testing revealed that he was mentally retarded and that there is a presumption that mental retardation is a condition that remains constant throughout life. (ECF No. 17 at 8, *citing Hodges v. Barnhart*, 276 F.3d 1265, 1267 (11th Cir. 2001)).

Listing 12.05 requires that the evidence demonstrate the onset of the impairment before the age of twenty-two (22). In *Hodges*, the court was confronted with an ALJ's decision to deny benefits based on the dearth of evidence concerning mental impairments prior to the age of 22. *See Grant v. Astrue*, 2007 U.S. App. LEXIS 26540 (11th Cir. 2007) (noting that the *Hodges* court

---

[2] Dr. Davidson's evaluation was performed on June 12, 2007. (Tr. 145-51.)

10

held that there is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70 and that it was error for the ALJ not to recognize the presumption.) Unlike in *Hodges*, however, there is no issue here whether Boozer's mental impairments were manifest before the age of 22.

Further, the *Hodges* presumption does not stand for the proposition that an IQ score from childhood that is consistent with mental retardation supercedes a later, valid IQ score taken when the claimant has attained adulthood. There is no presumption of continuing disability when a child attains the age of majority. *See, e.g., Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-287 n. 1 (6th Cir.1994); *Powell v. Astrue*, 2010 U.S. Dist. LEXIS 84032 (D. Md. Aug. 17, 2010). In addition, once a social security recipient reaches the age of 18, his or her claims are subject to a redetermination under adult standards for disability. *See, e.g., Lewis v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 8943 (N.D. Ohio Jan. 31, 2011); *Hamilton v. Astrue*, 2010 U.S. Dist. LEXIS 7243, 2010 WL 411322, *3 (N. D. Ohio 2010). Boozer has not cited any authority suggesting that this redetermination is subject to a presumption of continued disability. In fact, the case law is to the contrary. *See Wagner v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 89586 (N.D. Ohio July 15, 2010) ("Medical improvement is not a factor for consideration since the concept of redetermination is to treat the transition to adult SSI as a new application."); *Isaacson v. Astrue*, 2011 U.S. Dist. LEXIS 75067 (D. Utah July 11, 2011) ("The agency must not apply any presumption of continuing disability; instead, the agency must determine whether the claimant meets the adult standard of disability.")

Boozer also asserts that the ALJ failed to develop a full and fair record because the memory index and processing speed index were not covered in Dr. Davidson's consultative

report. (ECF No. 17 at 8-9.) In the Sixth Circuit, it is well established that Boozer, as the plaintiff – and not the ALJ – has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. App'x. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

"In determining whether it is necessary to remand for clarification of the record, the Court is guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Hawkinberry v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 69098 (N.D. Ohio May 24, 2011) (*citing Brown v. Shalala*, 44 F. 3d 931, 935-36 (11th Cir. 1995)). The Court finds that the evidence before the ALJ was sufficient. Boozer has not cited any authority suggesting that

those specific test results are manifestly necessary to determine whether a claimant has met or equaled the listing for mental retardation. It is within the ALJ's discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. *See, e.g., Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Here, the ALJ ordered a consultative examination that was performed by Dr. Davidson. The Court finds no error in the ALJ not ordering a second examination. The examination constituted substantial evidence on which the ALJ could rely.

Therefore, Boozer's first assignment of error is without merit.

*Accommodation Requirement*

Boozer next argues that the RFC finding was inaccurate, because the ALJ did not properly take problems with independent understanding/comprehension and pace into consideration. (ECF No. 17 at 9.)

The ALJ's hypothetical specifically limited Boozer to work that was simple, routine tasks, but not at a production rate pace. (Tr. 209-10.) Work-related directions were also limited to simple, short instructions that did not require reliance on written instructions or the performance of more than basic math calculations. *Id*. The ALJ adopted these work restrictions in her decision. (Tr. 13.) The Court finds nothing unreasonable or inaccurate about this hypothetical, as it incorporated those limitations that the ALJ found to be valid and supported by the evidence.

Boozer, however, contends that he would need at least three reminders daily to stay on task. (ECF No. 17 at 10.) This, according to the VE's testimony, renders him unemployable without an accommodation. *Id*. While the ALJ asked the VE whether a person who needed

three daily reminders to stay on task was employable (Tr. 212), she ultimately did not adopt such a finding in her opinion. (Tr. 13-15.) In support of his argument, Boozer cites an intelligence test that was performed in 2001 – over three years prior to his eighteenth birthday. (ECF No. 17 at 9-10, *citing* Tr. 54-59.) Boozer also argues that a third party questionnaire (completed by his father) and Dr. Davidson's testing, which found that Boozer had mild to moderate difficulty focusing, also support the need for an accommodation. (*Id.*, *citing* Tr. 136-43, 146-47.) While these sources may support the argument that Boozer had problems with understanding, comprehension, and pace, none of them contain limitations that render the ALJ's hypothetical inaccurate. Specifically, Boozer has not cited a single medical opinion suggesting that three daily reminders would actually be necessary. A review of the hearing testimony also reveals that neither Boozer nor his mother indicated that he required three reminders per day to stay on task. Simply put, there is no evidence suggesting that Boozer, when restricted to simple and routine work which did not require written instructions or more than basic math calculations, would, nonetheless, require three daily reminders to stay on task.

As such, Boozer's final assignment of error is without merit.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: December 14, 2011